USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/14/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUAN HERNANDEZ,

                          Plaintiff,

          -against-

GLENN S. GOORD, *et al.*,

                          Defendants.

---

01-Cv-9585 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

After plaintiff Juan Hernandez litigated this section 1983 action *pro se* for more than a decade, the Court granted Hernandez's request for the appointment of *pro bono* counsel and the case proceeded to trial. On May 9, 2014, a jury returned a verdict in favor of Hernandez on two of his claims and in favor of various defendants on Hernandez's remaining claims.

The jury's verdict, and in particular its answers to a series of special interrogatories, prompted a flurry of post-trial motions by both plaintiff and by defendant Douglas Williams as follows: (1) Hernandez's request to amend the third amended complaint to conform to the evidence at trial pursuant to Federal Rule of Civil Procedure 15(b); (2) a motion by Williams for judgment in his favor pursuant to Federal Rule of Civil Procedure 50(b); (3) a motion by defendant Williams for relief from the judgment against him pursuant to Federal Rule of Civil Procedure 60(b); and (4) a motion by Hernandez's counsel for attorney's fees and costs pursuant to 42 U.S.C. § 1988.

First, the Court grants plaintiff's motion to amend because the procedural history of this case demonstrates that Williams was long on notice that the May 2, 2005 incident where Williams purposely bumped Hernandez in a hallway was an aspect of Hernandez's retaliation claim, and Williams has demonstrated no prejudice from that incident being

presented to the jury. Second, the Court dismisses Williams's Rule 50(b) motion as untimely. Third, the Court denies Williams's Rule 60(b) motion because Williams has not demonstrated exceptional circumstances that would entitle him to relief, and for substantially the same reasons that the Court grants plaintiff's motion to amend. Fourth, the Court grants in part Hernandez's motion for fees and costs.

## I.   BACKGROUND

Hernandez's original complaint, filed *pro se* in 2001, asserted claims for damages against no fewer than twenty-three employees of two New York State Department of Corrections and Community Supervision (DOCCS) facilities at which Hernandez has been imprisoned. *See Hernandez v. Goord*, 312 F. Supp. 2d 537, 539 (S.D.N.Y. 2004). Throughout the extended course of the litigation, this Court thrice granted Hernandez leave to amend the complaint and in three separate orders granted in part various defendants' motions to dismiss. *See generally Hernandez v. Goord*, 2013 WL 2355448, at *4–5 (S.D.N.Y. May 29, 2013).

Following extended motion practice and discovery proceedings, on May 29, 2013 the Court granted in part and denied in part the remaining defendants' motion for summary judgment. *See id.* at *1. Of many claims asserted over the course of this litigation, the Court permitted only the following claims to proceed to a jury trial:

> I. First Amendment retaliation against prison counselor Robert Smith arising out of the inmate misbehavior reports Smith wrote in response to incidents on October 1 and October 4, 2001;
>
> II. As to an alleged July 6, 2004 assault:
>
> > a) Eighth Amendment excessive force against prison guard Douglas Williams;

2

b) Failure to intervene to stop the alleged July 6, 2004 assault asserted against guards Robert Clerc, Michael Mrzyglod, and Colin Fraser; and

c) First Amendment retaliation against Williams, Clerc, and Mrzyglod arising out of their alleged threats to Hernandez after he filed a grievance based on the alleged July 6, 2004 assault.

*See id.* at *12. The Court also granted plaintiff's request for the appointment of counsel, and on September 27, 2013 attorneys from the law firm of Weil, Gotshal & Manges LLP appeared as counsel on a *pro bono* basis. In light of the fact that Hernandez had proceeded *pro se* until that time, the Court permitted Weil, Gotshal to take certain additional discovery.

The parties tried this action to a jury over a six-day period. On May 9, 2014, the jury returned a verdict finding:

- defendant Smith liable for retaliating against Hernandez in violation of the First Amendment;
- defendants Williams, Clerc, Mrzyglod, and Fraser not liable on Hernandez's Eighth Amendment claim; and
- defendant Williams liable for retaliating against Hernandez in violation of the First Amendment.[1]

In its answers to a series of special interrogatories, the jury indicated that its verdict against Williams on Hernandez's First Amendment claim was based on the finding that "Williams retaliated against [Hernandez] on May 2, 2005, by crossing the yellow line in the F and G corridor and bumping his shoulder and forearm, for Hernandez having filed a grievance on July 14, 2004." (Trial Tr. 860:3–9.) The jury found that Williams did not retaliate against Hernandez by allegedly making certain statements on July 29, 2004 and in November 2004. (*Id.* 859:16–860:2.)

---

[1] At the start of trial, Hernandez abandoned his First Amendment retaliation claims against defendants Mrzyglod and Fraser. (Trial Tr. at 9:3–17.)

3

The jury awarded Hernandez $1 in nominal damages and $15,000 in punitive damages against Smith and $1 in nominal damages and $25,000 in punitive damages against Williams. The Clerk of Court entered judgment on May 13, 2014. (Dkt. No. 295.)

## II. THE COURT GRANTS HERNANDEZ'S MOTION TO AMEND THE COMPLAINT BECAUSE DEFENDANT WILLIAMS HAS NOT DEMONSTRATED PREJUDICE.

Plaintiff has moved pursuant to Federal Rule of Civil Procedure 15(b) to amend the third amended complaint to conform to the evidence presented at trial regarding a May 2, 2005 incident, which post-dated the filing of the third amended complaint by three months.

Plaintiff's third amended complaint, filed on February 4, 2005, asserted a First Amendment retaliation claim against defendant Williams. *See, e.g.*, *Hernandez*, 2013 WL 2355448, at *11. Specifically, Hernandez alleged that after he filed a grievance regarding Williams's alleged assault against him on July 6, 2004, Williams retaliated in two ways: (1) by telling Hernandez on July 29 that because Hernandez had filed a grievance, "there is a lot we can do, there is a lot we will do"; and (2) by telling Hernandez on November 17: "We are going to get you again, this time nobody is going to help you and it will be worst . . . . And if you sue me, so what the state will have to pay not me." (Third Am. Compl. ¶¶ 75, 79.)

At trial, as noted above, the jury found that Williams did not retaliate against Hernandez in either of those two respects, but did retaliate in another respect, as to which the jury also heard evidence: by intentionally bumping into Hernandez in a prison hallway on May 2, 2005.

### A. Rule 15(b) Standard

Federal Rule of Civil Procedure 15(b)(1) provides:

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an

4

amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

"In opposing a Rule 15(b) amendment, 'a party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory. Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case." *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000) (quoting *N.Y. State Elec. & Gas Corp. v. Sec. of Labor*, 88 F.3d 98, 104 (2d Cir. 1996)); *see also* 6A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 1495 (3d ed. updated 2014) ("To justify the exclusion of the evidence, the rule contemplates that the objecting party must be put to some serious disadvantage; it is not enough that the party advances an imagined grievance or seeks to protect some tactical advantage.").

"Rule 15(b) requires no motion or formal amendment of the pleadings." *See N.Y. State Elec. & Gas Corp.*, 88 F.3d at 105. "A motion to amend the pleadings to conform to the evidence may be made at any time, even after judgment." *See Regent Ins. Co. v. Storm King Contracting, Inc.*, 2008 WL 563465, at *14 (S.D.N.Y. Feb. 27, 2008).

### B.   Defendant Williams Suffered No Prejudice from Plaintiff's Introduction of Evidence Regarding the May 2, 2005 Incident.

To determine whether Williams suffered prejudice from Hernandez's introduction of evidence regarding the May 2, 2005 bumping incident, the Court will review Williams's opportunity (or lack thereof) to prepare and present a defense regarding that issue. *See Cruz*, 202 F.3d at 569. Based on the following discovery proceedings and motion practice over the course of several years, the Court concludes that Williams and his attorneys — the New York State Attorney General — had ample advance notice of

Hernandez's intent to offer evidence regarding the May 2, 2005 hallway incident in order to prepare a defense regarding that incident. Specifically:

• An assistant attorney general deposed Hernandez on February 20 and 22, 2007. (*See* Ex. to Pl.'s Opp. to Defs.' Mot. for Summ. J. dated Apr. 8, 2013.) During that deposition, Hernandez made repeated references to a May 9, 2005 grievance that he filed regarding the May 2, 2005 hallway incident. (*See* Dkt. No. 317-1.) When asked "[w]hat, if any, contact" Hernandez had "with Williams after" the July 6, 2004 alleged assault, Hernandez directed counsel to refer to the various grievances that Hernandez had filed. (Hernandez Dep. at 483:8–10, 486:3–8, 489:4–5, 16–18, 489:24–490:3.) Hernandez even listed May 2, 2005 as one of the dates on which he had contact with Williams after the July 6, 2004 alleged incident. (*Id.* at 490:25–491:7.)

• Hernandez's May 9, 2005 grievance — made part of the record in this case by Williams's counsel himself at Hernandez's deposition (*see id.* at 498:24–490:3 & Ex. D) — alleged that:

> On May 2, 2005 at about 6:59 A.M. I was on my way to my morning medication from the clinic. C.O. D. Williams was reporting to F-block down F&G corridor. As C.O. D. Williams was about to pass me[, h]e intentionally, maliciously, willfully walked toward the other side of the corridor, where I was walking. Using his shoulder in the left side of his body, he violently banged into me, then shoved me almost to the floor. This was an[] assault on my person, because he's been informed of my filing a civil suit against him before his initial assault of me on July 6, 2004.

(Dkt. No. 317-1.) The grievance also discussed the July 29, 2004 and November 2004 incidents as to which the jury heard testimony at trial. (*Id.*)

• In response to Magistrate Judge Eaton's August 9, 2007 order directing Hernandez to provide further information regarding the proposed testimony of several inmate witnesses, Hernandez submitted a

letter explaining that witness "A.S." would testify that he witnessed
Williams bump into Hernandez on the morning of May 2, 2005.
(Hernandez letter dated Aug. 18, 2007, at 14.)

• In response to this Court's October 22, 2010 directive that
Hernandez clarify his proposed witnesses' testimony, Hernandez
explained that the same witness will testify "that he witnessed the second
assault of plaintiff by defendant Williams on May 2, 2005. Mr. Santiago's
affidavit . . . relates to the conspiracy to retaliate . . . . and harass plaintiff
by defendant[] Williams." (Hernandez letter dated Nov. 15, 2010, at 5.)

• At defendant Williams's February 4, 2014 deposition, plaintiff's
counsel questioned Williams about the June 15, 2005 report he wrote in
response to Hernandez's May 9, 2005 grievance, in which Williams denied
encountering Hernandez on May 2, 2005. (Williams Dep. at 179:16–181:18.)
Williams testified that he had no recollection of any interaction with
Hernandez on May 2, 2005. (*Id.* at 181:16–18.)

• On April 1, 2014, plaintiff's counsel provided defense counsel with a
copy of a March 26, 2014 letter in which plaintiff's counsel reiterated that
"Santiago is expected to testify . . . that in or about May 2005, Mr. Santiago
witnessed Defendant Williams strike Mr. Hernandez and taunt him. This
testimony is relevant to prove that Defendant Williams took an adverse
action against Mr. Hernandez following Mr. Hernandez's grievance
against Defendant Williams . . . ." (*See* Garcia letter dated Apr. 1, 2014, Dkt.
No. 257.)

• By early April 2014, the parties had exchanged exhibit lists in
preparation for preparing their Joint Pretrial Order, *see, e.g.*, Dkt. No. 315-1,
at 2–3, and defendant Williams moved *in limine* to preclude Hernandez
from introducing evidence that "in May 2005, Williams bumped plaintiff
in the hall and then 'taunted' him," Dkt. No. 264, at 5. At an April 24, 2014
pretrial conference, the Court denied the motion and ruled that plaintiff
was entitled to introduce evidence of the May 2 incident in the hallway as
part of his retaliation claim against Williams. (Apr. 24, 2014 Hr'g Tr. 4:21–

7

22.) The Court reiterated its ruling both at the outset of trial and at a sidebar during trial. (Trial Tr. 12:3–6, 175:6–177:16.)

• The Joint Pretrial Order, signed by all counsel on April 8, 2014, listed among plaintiff's exhibits Williams's June 15, 2005 response to Hernandez's May 9, 2005 grievance. (Dkt. No. 265, at 20.)

• At trial, Hernandez testified that Williams nearly knocked him to the ground in a prison hallway on May 2, 2005. (Trial Tr. 185:10–16, 256:21–258:24.) Defense counsel cross-examined Hernandez at trial about the incident and the fact that Hernandez had filed a grievance against Williams based on the incident. (*Id.* 285:3–286:10.)

• Anthony Santiago[2] testified at trial that in or around May 2005, Williams "shoved [Hernandez] with his elbow and all that, pushed him." (Trial Tr. 369:21–375:8.) Defense counsel cross-examined Santiago on significant inconsistencies between his testimony and his pre-trial statements about the May 2, 2005 incident. (*Id.* at 375:23–379:1.)

• At trial, plaintiff's counsel questioned Williams about the May 2, 2005 incident, plaintiff's May 9 grievance, and Williams's June 15 response to that grievance. (*Id.* at 447:19–448:8.) Williams's June 15 response was admitted into evidence and Williams testified that his statements in that document were all true. (*Id.* at 448:12–15.) Williams's counsel elicited testimony on cross examination that on May 2, 2005, Williams did not push Hernandez. (*Id.* at 469:21–470:1.) On redirect examination by plaintiff's counsel, Williams testified that he no longer had a recollection of the events of May 2, 2005. (*Id.* at 476:5–22.)

• Williams's defense at trial regarding the May 2 incident was essentially that he did not retaliate against Hernandez in any regard and

---

[2] Anthony Santiago is presumably the "A.S." that plaintiff, in a letter to the Court dated August 18, 2007, said would testify to the May 2, 2005 hallway incident.

that Hernandez was not a credible witness. (*Id.* at 469:15–470:1, 745:16–746:13.)

From this procedural history the Court easily concludes that defendant Williams suffered no disadvantage in presenting his case regarding the May 2, 2005 incident, let alone any "serious disadvantage." *See Cruz*, 202 F.3d at 569; 6A WRIGHT & MILLER § 1495. By the time of trial, Williams had long been put on notice of plaintiff's intent to present evidence of the hallway incident to prove plaintiff's retaliation claim against Williams. Each of defendant Williams's arguments to the contrary is readily dispatched.

First, Williams cites this Court's and Magistrate Judge Eaton's multiple orders that "no further amendment or supplementation of the complaint will be permitted." (*E.g.* order dated Jan. 5, 2005 (Dkt. No. 58); order dated Jan. 18, 2005 (Dkt. No. 60).) But as this Court repeatedly articulated during trial, the Court permitted introduction of evidence regarding the May 2, 2005 incident not as a new *claim*, but as further evidence of Hernandez's single retaliation claim against Williams, a claim that was clearly pleaded in the complaint. *See* Tr. at 177:8–9, 608:12–20; *Jund v. Town of Hempstead*, 941 F.2d 1271, 1287 (2d Cir. 1991) (holding that evidence absent from a complaint was properly admitted at trial because the evidence "ar[o]se out of the scheme that was the focus of the pleadings" and was "directly related to the earlier" allegations raised in the complaint).

Second, Williams observes that Hernandez's *pro se* memorandum in opposition to defendants' summary judgment motion did not mention the May 2, 2005 incident and the Court's subsequent order denying that motion as to the retaliation claim did not discuss the May 2, 2005 incident. Williams accordingly contends that he reasonably believed that the May 2, 2005 incident was not part of Hernandez's retaliation claim against Williams. But Williams cites no authority for the proposition that the Court's summary of Hernandez's claims in the summary judgment order should constitute the outer limit of evidence that would be relevant or

admissible at trial. The May 29, 2013 Order simply discussed evidence sufficient to decide defendants' summary judgment motion. And Williams does not dispute that Hernandez's deposition testimony about the May 2, 2005 incident and his resulting May 9 grievance were part of the record on defendants' motion for summary judgment, and that the Court could have considered that evidence in deciding the motion were other evidence not alone sufficient to deny the motion as to plaintiff's retaliation claim.

Third, Williams argues that the omission of the May 2, 2005 incident from the *pro se* complaints prior to trial — in combination with Williams's reliance on the January 2005 and May 2013 orders cited above — deprived Williams of an opportunity to "find, locate and preserve documentation that could be used to counter that claim (for example, documentation such as log books that could identify other witnesses to this incident, who could have testified that there was no bump in the hall) and to refresh Williams's recollection about the incident," evidence that Williams asserts has been "long destroyed." But as noted above, Williams was on notice at least as of February 2007 — when Hernandez testified that he viewed the May 2, 2005 hallway incident as part of his retaliation claim and pointed Williams's counsel to his May 9, 2005 grievance — that Hernandez viewed the May 2, 2005 incident as part of his retaliation claim. Moreover, defendants did preserve and produce Williams's June 15, 2005 response to Hernandez's grievance, in which Williams stated little more than that he never assaulted Hernandez and that he did "not remember even seeing inmate Hernandez" that day. (Pl.'s Ex. 23; *see* Trial Tr. 448:8.) Williams's testimony both at his deposition and at trial was consistent with the grievance and response: that he did not assault Hernandez that day — or ever — and that he no longer had a specific recollection of that day's events. (Trial Tr. 447:19–448:15, 469:21–470:1, 476:5–22.) In that regard, Williams's testimony and defense was substantially identical to that regarding the alleged July and November 2004 retaliation: that Williams never threatened Hernandez and that Hernandez was not a credible witness. (*Id.* 469:15–20, 745:16–746:1.) Despite years of discovery, Williams

presented no witnesses to the alleged July or November 2004 incidents pleaded in the complaint. His contention that he would have done so as to the May 2, 2005 incident is therefore belied by his actual litigation strategy.

Fourth, Williams argues that Hernandez's Rule 15(b) motion should be denied for undue delay, futility, and laches and on statute-of-limitations grounds. But the standard for denying a Rule 15(b) motion to amend a pleading to conform to the evidence presented at trial is whether "evidence would prejudice [the objecting] party's action or defense on the merits," *see* Fed. R. Civ. P. 15(b), a standard that has not been met here.

In short, given (1) the longstanding notice to Williams that the May 2, 2005 hallway incident was part of Hernandez's retaliation claim, (2) the opportunity to conduct discovery on that incident, (3) the discovery actually conducted by the parties, (4) the fact that the trial testimony mirrored that discovery, and (5) the fact that Williams's defense at trial regarding that incident was identical to his defense regarding the July 29, 2004 and November 2004 alleged incidents as to which he does not dispute he was on notice, Williams has not demonstrated that inclusion of the May 2005 incident at trial "result[ed] in new problems of proof" or "disadvantaged [Williams] in presenting [his] case" to the jury. *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008); *Cruz*, 202 F.3d at 569. The Court therefore grants plaintiff's Rule 15(b) motion, and deems the complaint amended to conform to the evidence at trial that Williams retaliated against Hernandez on "May 2, 2005, by crossing the yellow line in the F and G corridor and bumping his shoulder and forearm, for Hernandez having filed a grievance on July 14, 2004." (Trial Tr. 860:3–9.)

### III.  WILLIAMS'S RULE 50(B) MOTION IS DISMISSED AS UNTIMELY.

On Wednesday June 11, 2014, defendant Williams moved for judgment as a matter of law pursuant to Rule 50(b), twenty-nine days after the entry of judgment on Tuesday May 13, 2014. (Dkt Nos. 295, 318.)

A Rule 50(b) motion regarding an issue decided by a jury verdict must be made "[n]o later than 28 days after the entry of judgment." "A court must not extend the time act under Rule[] 50(b) . . . ." Fed. R. Civ. P. 6(b)(2); *see also* Fed. R. Civ. P. 6(a). Rule 6(b) makes Rule 50(b)'s "time limitation jurisdictional so that the failure to make a timely motion divests the district court of power to modify the trial verdict." *See Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 230 (2d Cir. 2000).

In response to the Court's June 16, 2014 Order directing Williams to show cause why his Rule 50(b) motion should not be dismissed, Williams conceded that the motion was untimely filed.

The Court therefore dismisses Williams's Rule 50(b) motion as untimely. *See Weissman*, 214 F.3d at 230.

## IV. WILLIAMS HAS NOT DEMONSTRATED EXCEPTIONAL CIRCUMSTANCES THAT WOULD WARRANT RULE 60(B) RELIEF.

In response to the Court's order to show cause why defendant Williams's Rule 50(b) motion should not be dismissed, Williams also requested "that the Court treat the Rule 50 motion as a motion under Rule 60(b)(1), (4) and (6)."

Rule 60(b) provides in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; . . .
>
> (4) the judgment is void; . . . or
>
> (6) any other reason that justifies relief.

A party seeking relief pursuant to Rule 60(b) has the "burden of demonstrating 'exceptional circumstances.'" *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994). A Rule 60(b) motion is "addressed to the sound discretion of the district court." *See Nemaizer v.*

*Baker*, 793 F.2d 58 (2d Cir. 1986). The Court now considers Williams's arguments for Rule 60(b) relief.

### A.   Williams Is Not Entitled to Relief Pursuant to Rule 60(b)(1).

Williams asserts two grounds for relief pursuant to Rule 60(b)(1): first, that counsel's untimely filing of the Rule 50 motion "did not reflect lack of diligence and was excusable," and second, that the Court's admission of evidence regarding the May 2, 2005 incident was based on a "mistaken understanding of the summary judgment record."

#### 1.   *Williams Has Not Demonstrated Excusable Neglect.*

As for the first ground, counsel explains that the Rule 50 motion was filed late because of "a calculation mistake by counsel for Williams." Counsel "calendared the Rule 50 motion due date for . . . 4 weeks from May 14," whereas judgment was entered on May 13.

The determination of "excusable neglect" is "at bottom an equitable" inquiry, "taking account of all relevant circumstances surrounding the party's omission." *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993)).

> Factors to be considered in evaluating excusable neglect include '[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'

*See id.* (quoting *Pioneer*, 507 U.S. at 395). Here, as in "the typical case, the first two *Pioneer* factors . . . favor the moving party," Williams, and Hernandez does not argue otherwise. *See id.* As is also typical, "the absence of good faith" is not at issue. *See id.* The "focus[]" of the inquiry is instead "on the third factor: 'the reason for the delay, including whether it

was within the reasonable control of the movant.'" *See id.* (quoting *Pioneer*, 507 U.S. at 395)).

The Second Circuit has "noted that the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule and [has] held that where the rule is entirely clear, [the court] . . . expect[s] that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *See id.* at 366–67. In *Silivanch*, the Second Circuit held that the trial court abused its discretion by determining that an attorney who filed a notice of appeal two days late had demonstrated "excusable neglect," when the attorney relied on another party's counsel's misstatement during a scheduling conference regarding the deadline to appeal. *See id.* at 361, 367–70.

Williams's counsel's calendaring mistake is not meaningfully distinguishable from the mistake by counsel in *Silivanch*. Here, there was no ambiguity in determining the date of the judgment, which was both signed and docketed on May 13, 2014. Taking into account all of the *Pioneer* factors, and in light of the fact that Rule 50 sets forth a clear and unmistakable deadline, the Court concludes that Williams's counsel has not demonstrated excusable neglect. *See id*. at 367, 370.

Moreover, even if the Court were to consider Williams's Rule 60(b)(1) motion on the merits, the Court would deny the motion for substantially the same reasons that the Court grants Hernandez's Rule 15(b) motion.[3]

---

[3] Williams also argues that as a matter of law, there is no causal connection between Hernandez's July 14, 2004 grievance and the May 2, 2005 incident. Based on the evidence at trial regarding Williams's ongoing course of conduct, the Court disagrees that the jury could not reasonably find that the May 2, 2005 incident was in retaliation for Hernandez's July 2004 grievance. *See also Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005).

### 2. *Williams Has Not Demonstrated Any Mistake that Entitles Him to Relief.*

As noted above, Williams also contends that he is entitled to relief from the judgment against him on the ground that the Court misunderstood the summary judgment record when it permitted Hernandez to introduce evidence regarding the May 2, 2005 incident at trial.

Counsel misstates the record. First, as noted above, Hernandez's deposition testimony regarding the May 2, 2005 incident, and the May 9, 2005 grievance, were part of the summary judgment record. Second, during trial, the Court acknowledged that the May 29, 2013 decision on defendants' summary judgment motion did not "specifically deal with the" May 2, 2005 incident, but the Court held that Hernandez could introduce evidence of that incident to prove his "single retaliation claim" against Williams because that claim "ha[d] various aspects." (Trial Tr. at 176:18–19, 177:8–9.) Accordingly, Williams has not demonstrated any mistake that would entitle him to Rule 60(b)(1) relief.

### B. **Williams Did Not Suffer a Due Process Violation.**

Williams urges that he is entitled to Rule 60(b)(4) on the ground that his "due process rights were violated" because he "was not afforded a reasonable opportunity to submit a responsive pleading, nor any legal defenses, including but not limited to [a] statute of limitations defense, to the May 2, 2005 claim."

As noted above, Rule 60(b)(4) relief is available only when a judgment is "void." "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). Williams's asserted error "falls in neither category." *See id.*

As the Court has explained in the portion of this opinion granting Hernandez's Rule 15(b) motion, Williams had ample opportunity to

prepare and present a defense on the merits regarding the May 2, 2005 incident. He also had an opportunity to make a timely Rule 50(a) motion at trial (as he did) and to make a timely Rule 50(b) motion after entry of the judgment (as he did not). Williams suffered no due process violation.

### C. Williams Has Not Demonstrated "Any Other Reason" That Merits Rule 60(b) Relief.

Williams finally contends that he is entitled to relief pursuant to Rule 60(b)(6), which provides "a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by" Rule 60(b)'s "preceding clauses." *See Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994). Because Williams suffered no lack of notice or prejudice in presenting his defense at trial or subsequently, he is not entitled to Rule 60(b)(6) relief. This Court does not need to use its "grand reservoir of equitable power to do justice" in this case; the jury has already done just that.

In short, Williams has not demonstrated "exceptional circumstances" that warrant relief from the judgment against him. *See Paddington Partners*, 34 F.3d at 1142. His motion for relief from the judgment pursuant to Rule 60(b) is accordingly denied.

## V. As a Prevailing Party, Hernandez's Counsel Is Entitled to an Award of $60,003 in Fees and $47,103.09 in Costs.

Pursuant to 42 U.S.C. § 1988, Hernandez's counsel seeks to recover $60,003 in fees and $73,594.03 in costs from defendants Williams and Smith. Smith — who is represented by separate counsel from Williams — has filed no response to the motion. For the reasons that follow, the Court awards Hernandez's attorneys $60,003 in fees, of which Williams shall pay $36,251.51 and Smith shall pay $21,751.49. The Court also applies $2,000 from the judgment to go to payment of the fee award. The Court also awards counsel $47,103.99 in costs, for which Williams and Smith shall each be jointly and severally liable.

### A. Hernandez's Counsel Is Entitled to a Fee Award Equal to 150% of the Judgment.

Title 42 U.S.C. § 1988 provides that in section 1983 actions "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." However, the Prison Litigation Reform Act (PLRA) provided that any fee award in a prisoner's section 1983 suit cannot be "greater than 150 percent of the monetary judgment." *See Shepherd v. Goord*, 662 F.3d 603 (2d Cir. 2011) (citing 42 U.S.C. § 1997e(d)(2)). Accordingly Hernandez's counsel seeks to recover an attorney's fee of $60,003, fully 150 percent of the monetary judgment entered in Hernandez's favor. That request is eminently reasonable: the Weil, Gotshal firm volunteered to represent plaintiff *pro bono* and has spent the preceding eleven months aggressively and competently prosecuting this sprawling, lengthy litigation, and representing plaintiff at trial and in substantial post-trial motion practice.

#### 1. Hernandez is a Prevailing Party.

Because "[t]he purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances . . . a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (per curiam). To be a "prevailing party," "[i]t is sufficient that the plaintiff succeeded on any significant issue in the litigation, regardless of the magnitude of the relief obtained." *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998).

Hernandez, who won a damages award against both defendants Williams and Smith, is a prevailing party. Neither Williams nor Smith dispute as much. Nor has either defendant met his burden of identifying any "special circumstances [that] would render . . . [a fee] award unjust." *See Boudin v. Thomas*, 732 F.2d 1007 (2d Cir. 1984). Hernandez's counsel is entitled to fees and the Court proceeds to determine the amount of that award.

### 2. *The Court Will Not Reduce the Fee Award for Hernandez's Failure to Prevail on All of His Claims.*

Williams contends that the Court should substantially reduce the fee award because Hernandez did not prevail on his Eighth Amendment claims against any defendant at trial, and because the jury determined that Williams did not retaliate against Hernandez in either July 2004 or November 2004. However, "[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones . . . where they are inextricably intertwined and involve a common core of facts or are based on related legal theories." *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

The Court finds that Hernandez's Eighth Amendment claims (on which he did not prevail) are "inextricably intertwined" with the First Amendment claim against Williams (on which he did prevail), and that those claims "involve a common core of facts." *See id.* Plaintiff's unsuccessful Eighth Amendment claims were based on the contention that Williams assaulted him on July 6, 2004, while three other defendants looked on and failed to intervene despite an opportunity to do so. His First Amendment claim against Williams, in turn, arose out of Williams's retaliation against Hernandez after Hernandez filed a grievance regarding the alleged July 2004 assault. Under these circumstances, plaintiff's Eighth Amendment claims "necessarily intersect with [his] retaliation claims, given that the protected activity in which plaintiff[] engaged was to complain about" the alleged Eighth Amendment violations. *See Robinson v. City of New York*, 2009 WL 3109846, at *9 (S.D.N.Y. Sept. 29, 2009). Accordingly, the Court will not reduce counsel's fees on the ground that some of counsel's time was dedicated to claims as to which Hernandez did not prevail at trial.

Finally, the fact that many of Hernandez's claims were dismissed prior to trial when he was acting *pro se* is of no moment because Weil, Gotshal &

Manges did not represent him then and that firm has not sought a fee award for any time devoted by others to litigating those dismissed claims.

### 3.  *A Fee Award of $60,003 is Reasonable.*

"[T]he lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Perdue v. Kenny A.*, 559 U.S. 542 (2010) (abrogating the multi-factor approach endorsed in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), and referred to by the Second Circuit in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Board of Elections*, 522 F.3d 182 (2d Cir. 2008))).

In this case, the PLRA caps the recoverable hourly rate at "150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." *See* 42 U.S.C. § 1997e(d)(3). From September 1, 2013 through February 28, 2014, the Criminal Justice Act (CJA) rate for the Southern District of New York was $110 per hour, and since March 1, 2014, the CJA rate has been $126 per hour. *See* U.S. DIST. COURT FOR THE S. DIST. OF N.Y., *Attorney Hourly Rates*, http://www.nysd.uscourts.gov/file/forms/attorney-hourly-rates (last visited Aug. 14, 2014). Accordingly, the PLRA caps the recoverable hourly rate at $165 per hour from September 1, 2013 through February 28, 2014, and at $189 per hour from March 1, 2014 onward. Those hourly rates are unquestionably reasonable for counsel in the Southern District of New York, as defendant Williams concedes, and are well below the rates of $450 to $945 per hour paid by counsel's paying clients. *See* Decl. of Christopher L. Garcia dated June 10, 2014, at ¶ 55; *see also Robinson*, 2009 WL 3109846, at *4.

As for the number of hours spent on this matter, plaintiff argues that counsel reasonably expended 2,948.6 hours of work on this case for a total

lodestar of $530,811.[4] (*See* Garcia Decl. ¶¶ 3, 52, 68 & Ex. B.) As noted above, the fee award in this case is capped at $60,003, merely 11% of the total lodestar. In other words, the $60,003 for which plaintiff seeks reimbursement represents approximately 364 hours of the nearly 3,000 hours spent at the $165 hourly rate.

In response, Williams contends that Hernandez's counsel expended excessive time on various tasks. Based on the Court's review of the submissions, that is undoubtedly true, but as plaintiff's counsel aptly puts it: given the PLRA's fee cap, "no matter how you slice it," it was eminently reasonable for counsel to expend at least 364 hours preparing for trial and actually trying this case, which entailed reviewing thousands of pages of largely handwritten documents and scores of court filings made and decisions rendered during the decade that Hernandez proceeded *pro se*; taking seven depositions; litigating discovery disputes; meeting regularly with Hernandez; many court conferences and motions; and six days of actual trial time. Having presided over this action since its filing in 2001, and having adjudicated a multitude of disputes between aggressive and qualified counsel on both sides, the Court has no doubt that considerably more than 364 hours would also constitute a reasonable number of hours of attorney time spent preparing to try this action to a jury and trying it. *See Bliven v. Hunt*, 579 F.2d 204, 213 (2d Cir. 2009). Due to the statutory cap on fees, it is sufficient for this Court to conclude that 364 hours is reasonable.

Having concluded that the PLRA-capped hourly rates of $165 and $189 are reasonable, and that 364 hours represents a reasonable number of hours worked, the Court concludes that the PLRA-capped lodestar of

---

[4] Of those hours, 1103.1 hours were billed between September 1, 2013 to February 28, 2014 —amounting to a lodestar of $182,011.50 — and 1845.5 hours were billed since March 1, 2014 — amounting to a lodestar of $348,799.50.

$60,003 amounts to a reasonable attorney's fee. [5] *See Millea*, 658 F.3d at 166; 42 U.S.C. § 1997e(d)(3).

### 4. The Court Designates $2,000 of the Judgment to Satisfy the Attorney's Fees Award.

Pursuant to the PLRA, "[w]henever a monetary judgment is awarded in" certain actions, "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." *See* 42 U.S.C. § 1997e(d)(2). The parties agree that this provision applies but dispute the percentage of the judgment that should be applied to the attorney's fees award. Hernandez argues for 1 percent, while Williams argues for 25 percent.

"[A] district court may apply less than 25 percent of the judgment (as long as it applies *some* portion of the judgment) to satisfy the attorney's fee award." *See Parker v. Conway*, 581 F.3d 198, 205 (3d Cir. 2009). "A district court has broad discretion in determining an appropriate percentage under § 1997e(d)(2)." *See Kahle v. Leonard*, 563 F.3d 736, 743 (8th Cir. 2009); *Hall v. Terrell*, 648 F. Supp. 2d 1229, 1236 (D. Colo. 2009).

---

[5] The Court notes that Weil, Gotshal & Manges is a signatory to the Pro Bono Institute's Law Firm Pro Bono Challenge, pursuant to which "[f]irms that receive fees" in most *pro bono* matters "are **strongly** encouraged to contribute an appropriate portion of those fees to organizations or projects that provide services to persons of limited means." *See* THE PRO BONO INST., *Law Firm Pro Bono Challenge: Commentary to Statement of Principles*, http://www.probonoinst.org/wpps/wp-content/uploads/law_firm_challenge_commentary.pdf (last visited Aug. 14, 2014) (emphasis in the original); THE PRO BONO INST., *Law Firm Pro Bono Challenge Signatories List*, http://www.probonoinst.org/projects/law-firm-pro-bono/law-firm-pro-bono-challenge-signatory-law-firms/law-firm-pro-bono-challenge-signatories-list (last visited Aug. 14, 2014). The Court has no doubt counsel will honor that statement.

The Court in its discretion designates $2,000, which is about five percent of the $40,002 judgment, to satisfy the amount of attorney's fees awarded against defendants Williams and Smith. That amount will satisfy the PLRA's requirement that Hernandez personally bear some portion of the fee award, and is sufficiently small that it will neither detract from the jury's decision to punish defendants by awarding punitive damages, nor deter prisoners from bringing meritorious claims in the future.

### 5. Defendants Williams and Smith Are Not Jointly and Severally Liable for the Attorney's Fees Award.

Defendant Williams's final contention regarding the attorney's fees award is that he should not be held jointly and severally liable for the entire award. He urges that the fee award should be apportioned based on each defendant's share of the total judgment. The Court agrees.

A "district court may allocate the fee award between the responsible parties, setting the percentage for which each is liable where the claims against the defendants are separate and distinct or where culpability is significantly unequal, or it may hold the responsible parties jointly and severally liable for the fee award." *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990). A "district court should make every effort to achieve the most fair and sensible solution that is possible." *Id.*

Hernandez's claims against Smith and Williams were "separate and distinct," *see id.* at 139, arising from entirely separate courses of conduct, and resulting in separate, rather than "indivisible" injuries. *See id.* at 139–40. Smith retaliated against Hernandez by filing a false misbehavior report in October 2001. Williams's First Amendment violation occurred later, when Williams took action in May 2005 against Hernandez for having filed a grievance against Williams on July 14, 2004. Because these two defendants were not "joint tortfeasors," the Court exercises its discretion to apportion liability for attorney's fees in relation to each defendant's share of the judgment.

The total amount of attorney's fees to be borne by defendants, after applying $2,000 from the judgment pursuant to section 1997e(d)(2), is $58,003. Williams, who is responsible for $25,001 of the $40,002 judgment, shall be responsible for $36,251.51 in attorney's fees. Smith, who is responsible for $15,001 of the judgment, shall be responsible for $21,751.49 in attorney's fees.

### B.   Hernandez's Counsel Is Entitled to $47,103.99 in Costs.

"In addition to compensation for hours reasonably expended, a prevailing party is entitled to recover 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Robinson*, 2009 WL 3109846, at *10 (quoting *LeBlanc-Sternberg*, 143 F.3d at 763). "Those costs awarded under § 1988 include not only those ordinarily recoverable pursuant to 28 U.S.C. § 1920 and Rule 54(d)(1) of the Federal Rules of Civil Procedure, but also any additional expenses ordinarily charged in the particular legal marketplace." *Id.*

The Court now addresses defendant Williams's specific objections to plaintiff's counsel's request to be reimbursed for $73,594.03 in costs.

**1.** Williams contends that he should not be accountable for costs associated with Hernandez's claims against defendants Clerc, Fraser, and Mrzyglod, but Williams cites no authority whatsoever in support of that position. As the Court explained in Section V.A.2 *supra*, Hernandez's claims against these other defendants were "inextricably intertwined" with his claims against Williams. *See Quaratino*, 166 F.3d at 425. Given the factual overlap between plaintiff's Eighth Amendment claims against those defendants and his First Amendment claim against Williams, there is no sensible way to disaggregate the vast majority of the costs incurred in litigating those claims.

**2.** Williams argues that he should not be held accountable for costs attributable to plaintiff's claims against Smith. But as Williams himself recognizes, it is impracticable to identify most of those costs, with the

exception of a handful of minor ones. The vast majority of plaintiff's costs are for travel, research, photocopying, printing, scanning, and litigation support — all related to general trial preparation. Moreover, until shortly before trial, Williams and Smith were represented by the same counsel — the New York State Attorney General — who engaged in a common litigation strategy in defending against Hernandez's claims. Under all of these circumstances, "an attempt to precisely balance the amount of responsibility rightfully placed on either" defendant would be "both a futile and wasteful task." *See Koster*, 903 F.2d at 139. The Court declines to require plaintiff's counsel to undertake such a senseless endeavor.

**3.** Williams objects to $1,965.98 incurred in videotaping Williams's deposition. Because "there was [no] expectation among the parties that the video of [Williams's] testimony might be presented at trial," that cost is not reimbursable. *See Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, 2011 WL 2848644, at *4 (S.D.N.Y. July 18, 2011). The remaining $1,036.55 deposition cost is reimbursable as an ordinary litigation cost.

**4.** Williams takes issue with $7,050 in what he characterizes as costs incurred for "computer research." *See United States v. Merritt Meridian Construction Corp.*, 95 F.3d 153, 173 (2d Cir. 1996). But as plaintiff's counsel has explained, the contested charges are actually for the costs of copies of filings and unpublished documents from the federal courts' PACER system and other vendors, and for services to locate individuals for service of process. (*See* Garcia Decl. ¶ 75; Dkt. No. 315, at 8–9.) Such costs are reasonably charged to paying clients and are therefore reimbursable.

**5.** Williams disputes plaintiff's entitlement to reimbursement for various copying, printing, and scanning costs, which he contends are unreasonably high. "In this circuit, expenses for photocopies have been expressly identified as ordinarily charged to clients and therefore recoverable pursuant to 42 U.S.C. § 1988." *See Anderson v. City of New York*, 132 F. Supp. 2d 239, 246 (S.D.N.Y. 2011). Nonetheless, the Court agrees that some of plaintiff's requested costs are excessive. Plaintiff's counsel has

identified the documents copied in only the most general terms, and the Court doubts that a paying client would accept a bill for copying and printing 93,365 black-and-white pages at a cost of $14,250 in this case, which is not document-intensive. The Court therefore awards costs for copying and printing "only" 10,000 black-and-white pages, which, based on the Court's familiarity with the case, is a more reasonable amount given the volume of discovery and the number of exhibits listed in the Joint Pretrial Order. At a rate of 15 cents per page, *see Robinson*, 2009 WL 3109846, at *11, the Court reduces from $14,250.39 to $1,500 the permissible amount of black-and-white copying and printing costs.

Plaintiff also seeks $5,056 for printing 10,112 pages in color, an outlay which is excessive for two reasons. First, absent "additional supporting information," courts have capped the per-page cost for color printing at 25 cents per page. *See, e.g., Salazar v. District of Columbia*, 2014 WL 307484, at *15 (D.D.C. Jan. 30, 2014). Second, plaintiff has not identified the need for such a large quantity of color documents. Precious few of the exhibits admitted at trial merited color printing. The Court accordingly limits plaintiff's recovery for color printing to 250 pages at 25 cents per page, totaling $62.50.

Plaintiff seeks the costs of scanning documents at ten-to-twelve cents per page. Such costs are taxable against defendants in the amount sought by counsel. *See Salazar*, 2014 WL 307484, at *15.

Finally, Hernandez's counsel has not provided adequate detail regarding the $906.93 charge for printing a trial demonstrative.

**6.** Williams objects to $4,066.74 in costs for daily trial transcripts. Plaintiff's counsel has not demonstrated the necessity for such transcripts given the relatively short duration of the trial and the healthy number of plaintiff's attorneys in attendance. *See Galella v. Onassis*, 487 F.2d 986, 999 (2d Cir. 1973); *Scott v. WPIX, Inc.*, 2012 WL 6188620, at *1 (S.D.N.Y. Dec. 11, 2012). As for $1,221.39 in costs for transcripts of proceedings prior to trial, these costs are reimbursable. The case that Williams cites to the contrary,

*Burchette v. Abercrombie & Fitch Stores, Inc.*, 2010 WL 3720834 (S.D.N.Y. Sept. 22, 2010), does not govern costs awardable pursuant to 42 U.S.C. § 1988. The Court in its discretion allows recovery of those reasonable expenses. *See Lawson v. City of N.Y.*, 2000 WL 1617014, at *5 (S.D.N.Y. Oct. 27, 2000).

**7.** The $697.09 in Federal Express and courier services to which Williams objects are recoverable. *See Hutchinson v. McCabee*, 2001 WL 930842, at *7 (S.D.N.Y. Aug. 15, 2001). Given Hernandez's imprisonment, counsel reasonably used Federal Express to assure that Hernandez received time-sensitive correspondence.

**8.** Hernandez's counsel reasonably expended $112.95 to locate potential trial witnesses. As for the $1,606.50 in "investigative services" related to potential witnesses Joseph Evans and Michael Jenkins, counsel has not provided sufficient detail to substantiate the magnitude of those costs and they are disallowed.

**9.** Given the presence of several attorneys admitted to practice in the Southern District of New York on plaintiff's team, the $200 *pro hac vice* admission fee is not an expense to be borne by defendants.

The Court has independently assessed the requested costs to which Williams has not specifically objected and concludes in the Court's discretion that plaintiff is entitled to those remaining costs. Subtracting the impermissible $1,965.98 video deposition, $12,750.39 black-and-white copying, $4,993.50 color printing, $906.93 trial demonstrative, $4,066.74 daily transcripts, $1,606.50 investigative services, and $200 *pro hac vice* admission costs from plaintiff's request for $73,594.03, the Court awards $47,103.99 in reasonable litigation expenses. Defendants Williams and Smith are jointly and severally liable for that amount.

## VI. CONCLUSION

The Court has resolved the parties' motions as follows:

- Plaintiff's Rule 15(b) motion is granted, and the third amended complaint is amended to conform to the evidence at trial that Williams retaliated against Hernandez on "May 2, 2005, by crossing the yellow line in the F and G corridor and bumping his shoulder and forearm, for Hernandez having filed a grievance on July 14, 2004." (Dkt. No. 293.)

- Defendant Williams's Rule 50(b) and 60(b) motions are denied. (Dkt. Nos. 318, 328.)

- The Court awards Hernandez's attorneys $60,003 in fees and $47,103.99 in costs. The Court applies $2,000 from the judgment to satisfy the fees award. Of the remaining $58,003 in fees, Williams shall be responsible for $36,251.51 and Smith shall be responsible for $21,751.49. Williams and Smith shall be jointly and severally liable for the costs. (Dkt. No. 313.)

Dated:  New York, New York
        August 14, 2014

SO ORDERED:

Sidney H. Stein, U.S.D.J.